JARKA CORPORATION, Employer and Liberty Mutual Insurance Company, Insurance Carrier, Plaintiffs-Appellants,

v.

Thomas F. HUGHES, as Deputy Commissioner for the Second Compensation District of the United States Department of Labor, and Frank Zirino, Claimant, Defendants-Appellees.

Civ. No. 60-C-454.

United States District Court
E. D. New York.

July 14, 1961.

Philip F. DiCostanzo, Brooklyn, N. Y., for claimant Frank Zirino.

Joseph P. Hoey, U. S. Atty., by Ann B. Miele, Asst. U. S. Atty., Brooklyn, N. Y., for defendant Thomas F. Hughes.

Albert P. Thill, for Brooklyn, N. Y., for plaintiffs.

RAYFIEL, District Judge.

These are cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This action was brought pursuant to Title 33 U.S.C.A. § 921, to review a Workmen's Compensation Order and Findings made by the defendant on April 29, 1960.

A short résumé of the facts follows:

On November 1, 1948, one Frank Zirino, hereinafter referred to as the claimant, while employed as a longshoreman by the Jarka Corporation on board a vessel which was then being loaded by it, was struck on the right side of the face by a beam, as a result of which he sustained certain personal injuries. At the time of the accident he was 58 years of age.

The claimant filed an application for compensation pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

Hearings were held before Deputy Commissioner Dennis O'Keefe of the Second Compensation District of the United States Department of Labor on March 27, 1952 and April 13, 1952, following which he made Findings of Fact and an Award dated April 24, 1952. He found that the claimant was temporarily totally disabled from November 2, 1948 to May 21, 1951, for which he was entitled to 133 weeks compensation at $29.08 per week, and temporarily partially disabled from May 21, 1951 to April 21, 1952, on which date he was still temporarily partially disabled, having a wage earning capacity of $19.62 per week during the latter period, for which he was entitled to 48 weeks compensation at $16 per week. He directed that the employer and

carrier (Liberty Mutual Insurance Company) continue payments thereafter in biweekly installments of $16 per week until the disability ceased or until otherwise ordered.

The employer and carrier (plaintiffs herein) continued the payments of $16 per week to the claimant until September 22, 1958. At that time, according to the provisions of Subdivision (m) of Section 914, Title 33 U.S.C.A., the maximum liability of the plaintiffs for a partial disability was $10,000, the amount paid to that date.

On July 13, 1959 the claimant, pursuant to Section 922 of said Title, applied through his present attorney to the Department of Labor for the review of the case on the ground of a change in condition respecting his disability. Hearings were held before Deputy Commissioner Thomas F. Hughes on November 16, 1959, January 13, 1960 and March 2, 1960, as a result of which the Deputy Commissioner made Findings and Fact and a modified award, dated April 29, 1960, in which he found as a fact "that as a result of the cerebral concussion resulting from the injury of November 1, 1948, claimant developed personality disorder with conversion reaction, memory impairment and increase in the occurrence of convulsive seizures; that considering plaintiff's age, (date of birth May 18, 1890), his lack of formal education and his inability to read and write, that his industrial experience has been limited to work as a seaman and longshoreman, and the nature and extent of his disability, he is permanently, totally incapacitated from engaging in gainful employment; that as a result of the injury, claimant has continued to be totally disabled from November 2, 1948 to April 4, 1960 inclusive, * * *." The modified award provided that the claimant was entitled to 596 weeks of compensation at $29 per week for permanent total disability, a total of $17,331.68, and, since the sum of $10,000 had been paid to the claimant by the plaintiffs, they were directed to pay him the sum of $7,331.68

forthwith, and to continue payments thereafter at the rate of $29.06 per week.

The plaintiffs contend that the defendant erred in modifying the award of Deputy Commissioner O'Keefe to provide for payments for total permanent disability from November 1, 1948 to the present time. They claim that there was no proof as to the time when the change in the claimant's condition from partial to total disability occurred, and that said Section 922 requires that there be either a change in conditions or a mistake in a determination of fact before the original award can be modified. They conclude, therefore, that the modified award of April 29, 1960 was not supported by substantial evidence and should be reversed, and that the matter should be remitted for the purpose of fixing the date on which the claimant's disability changed from partial to total.

Section 922, supra, reads as follows: "Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such

manner and by such method as may be determined by the deputy commissioner with the approval of the Secretary."

■ In their interpretation of the said Section the courts have held that it is not necessary for the Deputy Commissioner to state specifically the ground on which he was basing such new order.

The case of Bethlehem Shipbuilding Corp. v. Cardillo, 1 Cir., 102 F.2d 299, certiorari denied 307 U.S. 645, 59 S.Ct. 1042, 83 L.Ed. 1525, is almost exactly in point. There, as in the case at bar, there was a modification by a Deputy Commissioner of two prior orders of another Deputy Commissioner, which increased the claimant's benefits retroactively. In that case, as in the instant case, the Deputy Commissioner did not state specifically whether he based his amended award on a change in conditions or a mistake in a determination of fact. Circuit Judge Bingham, in commenting on that phase of the case said, 102 F.2d at page 303,

"Having held that Section 22, as amended, is applicable to the compensation case which deputy Cardillo had before him on review, the next question is whether Section 22, as amended, required that he should state in so many words that he found a change in conditions or a mistake in a determination of fact by deputy Monahan, or whether the language of that section is complied with if his new compensation order contains findings of fact disclosing a change of conditions or a mistake in the determination of fact by Monahan upon which he predicated his new award of March 3, 1937. Cardillo in his findings of fact did not state in words that he found a change in conditions or a mistake in a determination of fact by deputy Monahan, and the language of Section 22, as amended, does not in terms require such a statement. But he stated in his new order specifically and in detail the facts that he found, and, immediately following the statement of facts, he stated that

his new order or modification of Monahan's order of August 21, 1936, was made 'upon the foregoing facts'.

"[4–6]. Section 22, as amended, is a remedial statute and calls for a liberal construction; and where it is plain from the facts found by the deputy commissioner, acting under that section, that his order is based either on a change of conditions or on a mistake in regard to the determination of a fact by the deputy commissioner making the order in the compensation case under review, the intent and meaning of the statute are adequately complied with. The order of deputy Cardillo shows that he was acting under Section 22, as amended; for the order so states. He also had before him the prior award of deputy Monahan granting the claimant compensation for temporary partial disability down to December 27, 1935, and which rejected his claim for compensation thereafter, on the ground that he 'had not been disabled as a result of the injury since that date.' With deputy Monahan's prior award and the evidence submitted for his consideration at the hearing before him, he found that the claimant was temporarily totally disabled after December 27, 1935, and based his new order for increased compensation on that finding and numerous other specific findings as to the claimant's condition, and it cannot reasonably be contended that his new award was not based on his finding of the claimant's change in condition from what deputy Monahan found it to be (no disability after December 27, 1935 due to the injury) to what he found it to be (total disability due to his injury). To hold that, under such circumstances, the finding of deputy Cardillo did not in these respects answer the requirements of Section 22, as amended, would, to our minds, be a traversity (sic) on the law."

The defendant herein had before him the entire record in the case. Dr. Patella's report, dated August 28, 1950, submitted to Deputy O'Keefe on the hearings held prior to the time of the original award, stated under item 12 " * * * Cerebral concussion. Post concussion syndrome. Traumatic conversion hysteria (Psychoneurosis). * * * " Notwithstanding this finding Dr. Patella found that the claimant could have returned to his usual work as a longshoreman on April 22, 1950.

He also had the report and testimony of Dr. Keschner, who said (see page 51 of the record before Deputy Commissioner O'Keefe) that he felt that the claimant could do "at least light work on ground level." This doctor's report, dated December 12, 1951, stated under *Opinion*: "*Diagnosis*: The claimant is suffering from a neurosis following trauma", and under *Treatment*: "The only rational treatment for his neurosis is psychotherapy to which, unfortunately, this claimant is not amenable."

In all of the doctors' reports, including those of Dr. Brock, who felt that the claimant had little or no disability, mention is made of the fact that he has had seizures or convulsions on various occasions.

The defendant also heard the testimony of Dr. Carotenuto and Dr. Siegel, both of whom testified that the claimant was totally and permanently disabled when they examined him.

Dr. Carotenuto's report of July 7, 1959 contains the following statement under *Comment*: "This man is (sic) a definite organic brain disorder due to the cerebral trauma which occurred both in 1944 and then was intensified and aggravated by the injury of Nov. 1948. The various reports mention that in 1944 he had a convulsion in the Brooklyn Hospital; was irritable and had rage reactions. Reports also say that the air studies were negative. Dr. Perkins has felt that this man had definite convulsive seizures which were organic in type. My opinion is that he is suffering from a chronic brain syndrome dur (sic) to

cerebral injury and that the cerebral injury has caused epileptic convulsive disorder with personality changes. If the convulsive seizures and personality disorder began to be manifested after the first head injury in 1944, then from my history the second head injury intensified and accelerated the rate of organic pathology which was present at the time of this second injury. This man is definitely totally disabled. He requires constant supervision and needs an attendant for traveling; and his condition will become progressively worse and is irreversible. I doubt if any anti-convulsants will be of any help."

 In my opinion the amended award of the defendant is based upon substantial evidence and accordingly the plaintiff's motion for summary judgment is denied and that of the defendant is granted.

Settle order on notice.